THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LANCE J. EVANS, Defendant-Appellant.

Second District   No. 2—92—1005

Opinion filed March 29, 1994.

Steven Messner, of Wilmette, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lisa Anne Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

In April 1992, defendant, Lance Evans, was indicted for unlawful possession of more than 30 but less than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 704(d) (now 720 ILCS 550/4(d) (West 1992))). After the trial court denied his pretrial motion to suppress evidence and his motion to reconsider the suppression motion, the court held a bench trial with stipulated evidence in which defendant was convicted of the offense. Defendant now appeals from this conviction, contending that it was error to deny his motion to suppress evidence. We reverse.

The testimony from the initial suppression hearing reveals that, on April 12, 1992, the 29-year-old defendant was stopped for a speeding violation by Officer Donald Draksler of the Bolingbrook police department. Defendant testified that, at approximately 5 p.m., he

was driving a 1985 Cadillac El Dorado northbound on Route 53 through Bolingbrook, Illinois, when the officer pulled him over. Draksler approached defendant's vehicle and asked for a driver's license. After defendant gave him his license, the officer went back to his squad car and returned about five minutes later.

Defendant had remained in his car with the driver's window down. He was wearing a long-sleeved shirt with a single pocket on the left side. According to defendant, the officer handed him a traffic citation and then asked defendant what was in his front shirt pocket. Defendant did not respond. Defendant testified that the officer, who was standing outside the driver's window, then reached into defendant's shirt pocket and pulled out a small wooden box. The officer did not have a warrant of any kind and did not suggest that defendant was being investigated for any type of crime other than a minor traffic violation. The unmarked box measured about $1^1/2$ inches by $2^1/2$ inches and was closed on all sides. After examining the box and asking defendant some questions, the officer asked defendant to get out of the car and placed him in handcuffs. Defendant noticed that one of the officer's hands reached toward his pistol. Defendant did not feel free to leave at this time. He did not receive any *Miranda* warnings at the scene of the stop. Defendant was escorted to the rear area of the car and was asked some questions. The officer opened the trunk and took defendant to the police car where he was placed inside. The officer advised him that a canine unit would be coming and shut the door. At the hearing, defendant exhibited a box (defense exhibit No. 1) identical to the one in question at the scene of the stop.

On cross-examination, defendant stated that not more than five seconds elapsed between the time the officer handed him the fully written traffic citation and the officer reached into defendant's pocket when defendant did not respond to the officer's question. Defendant denied that after he got out of the car he consented to the officer's looking into his car. He did not consent to a search of his vehicle until he was placed in the jail. Defendant admitted that he was not a cigarette smoker. Defendant explained that he purchased the box at a tobacco shop in Carpentersville, Illinois. It contained a pipe and was designed for persons who wanted to take one or two puffs of tobacco and satisfy their craving without lighting up an entire cigarette.

On redirect examination, defendant testified that there was a patent number assigned to the box device. The defense also tendered to the court a United States document certifying the patent number. The exhibits were admitted into evidence along with a business card

identifying Igor's Tobacco & Gift Shop in Carpentersville and a sample of Igor's blend of pipe tobacco given to defendant when he purchased the box device.

Officer Draksler testified that, at about 5:30 p.m. on April 12, 1992, he obtained a radar reading of defendant's Cadillac traveling at 65 miles per hour in a 45 mile-per-hour zone. He stopped defendant's vehicle at 83rd Street and Route 53. After requesting defendant's license and proof of insurance, Draksler explained that he was going to issue a citation for speeding. Draksler went back to his squad car to complete the traffic ticket and returned to defendant's car to issue the citation. Defendant was sitting in his car and was wearing a short-sleeved dress shirt. As he was issuing the citation, Draksler, who was standing outside, looked inside defendant's car and noticed a wooden box inside his shirt pocket. According to Draksler, the box was known as a "stash box." Draksler testified that People's exhibit No. 2 was the box he had seen in defendant's pocket. The upper part of the box had a sliding trap door which was closed at the time he saw it in defendant's pocket. Draksler stated that he had training in the area of drug enforcement. He said that, in over 50 situations, he had occasion to arrest or come into contact with persons in connection with this type of box and in each case the box did not contain tobacco. Draksler compared the box with that exhibited by the defense and found them to be essentially the same. Inside the defense exhibit was a little brass object used for smoking and known as a "one-hitter." The box also contained a cutout section where cannabis could be found.

Draksler testified that, after he saw the box, he asked defendant to remove it from his shirt pocket and defendant handed it to him. Draksler opened the top of the box and looked inside and observed what he suspected was cannabis. He then asked defendant to step out of his car and stated he would be conducting a search of the vehicle. He asked if defendant had any more cannabis in the vehicle and defendant said he had some in the backseat. Draksler eventually located additional cannabis in three small baggies inside of a duffel bag in the backseat.

On cross-examination, Draksler stated that he had worked as a patrolman for three years in the Village of Plainfield and had been working for the Bolingbrook police department as a patrolman for three years. It was the primary duty of detectives and other investigators to investigate drug and violent crimes. Draksler was not an investigator. As a patrol officer, he responded to calls or dealt with traffic control. When he stopped defendant's vehicle, he was responding only to the speeding violation. When he handed the traf-

fic citation to defendant, the driver's window was down. Draksler did not observe anything unusual about the interior of the vehicle itself. When he saw the box, he did not notice any writing on the outside of it. He denied that he took the box out of defendant's pocket, but said he asked defendant to hand it to him. He did not observe any cannabis or cannabis residue anywhere in the car or in defendant's pocket. Draksler said that he was searching for weapons at this time, but he admitted that he did not think the box contained any weapon. After he opened the box, he asked defendant to step out of the car. Defendant was not free to leave at this time and was under arrest. He then asked defendant if there was any more cannabis in the car and explained that he would be searching the vehicle. He took defendant into custody and placed him in the squad car. Draksler did not read defendant his *Miranda* rights until 7:26 p.m., approximately two hours later, at the police station. The consent to search form was also signed at the police station.

After hearing the arguments of counsel, the court denied defendant's motion to suppress evidence. On August 6, 1992, after hearing further arguments of counsel, the court denied defendant's motion to reconsider. A bench trial with stipulated evidence followed which relied almost entirely on the testimony from the hearing of the motion to suppress. It was further stipulated that the State would produce testimony regarding two of the items taken from defendant which were analyzed by the Illinois State Police Crime Laboratory, and each contained some 27 grams of plant material identified as cannabis. The court found defendant guilty of the offense in accordance with the indictment and sentenced defendant. This timely appeal followed.

We first observe that defendant did not renew his motion to reconsider the motion to suppress after the stipulated bench trial which immediately followed the denial of his motion to reconsider. Although a written post-trial motion is generally required to preserve an issue for appeal, we elect to review the issue presented here as plain error rather than treating it as waived. The question whether the officer had probable cause to seize and search the container was not at all clear-cut in this case; we necessarily had to consider the merits of the question in order to determine whether plain error was committed (see *People v. Young* (1989), 128 Ill. 2d 1), and we have determined that the trial court's ruling was erroneous. Furthermore, defendant twice presented the issue thoroughly in the trial court, and the issue has again been briefed in this court without objection from the State. Since the issue was argued before the trial court and the claimed error is both substantial and premised on a constitutional

right, we will therefore consider it. See *People v. Chandler* (1989), 129 Ill. 2d 233, 242.

On appeal, defendant argues that the trial court erred in denying his motion to suppress the evidence because (1) the officer did not have probable cause to retrieve and open the closed, small wooden box in his shirt pocket; and (2) absent probable cause to seize and search the wooden box, there was no further legal authority to conduct any additional search of defendant or his vehicle. Defendant posits that the evidence derived from the subsequent search of his vehicle is the tainted fruit of the unlawful search of the wooden box and the derivative evidence should have been suppressed.

Defendant relies principally on *People v. Penny* (1989), 188 Ill. App. 3d 499. There the appellate court affirmed the trial court's order suppressing the evidence where the officer testified that, following a stop for an expired license sticker, he saw in defendant's car a package seven inches in diameter and four inches thick, wrapped in brown plastic, which "looked like a kilo of cocaine" and felt "like a brick." Notwithstanding the officer's belief based on his prior experience that the package probably contained a controlled substance, the reviewing court in *Penny* determined that this belief did not amount to probable cause to seize and search the package in the absence of other incriminating circumstances. The court found that the package could have contained numerous legitimate items; the court rejected the argument that the case fit within the "single-purpose container" doctrine because the package did not have sufficiently distinctive characteristics which would reasonably lead someone to believe that it contained contraband. *Penny*, 188 Ill. App. 3d at 504-05, citing *State v. Courcy* (1987), 48 Wash. App. 326, 739 P.2d 98 (single-purpose container doctrine applied where it was "immediately apparent" to experienced officers that precisely folded blue and black paper "bindle" in identification holder contained cocaine and defendant pulled holder back to his chest); see also *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (plurality opinion).

We agree that *Penny* and the cases following it are sufficiently analogous to apply here and that the evidence should have been suppressed because the officer did not have probable cause to search the box. The container was not one of those rare "single-purpose" containers which by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance and the containers can reasonably have no legitimate purpose other than the concealment of contraband. See *Brown v. State* (Alaska App. 1991), 809 P.2d 421, 422, discussing *Texas v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535; see

also *Newhall v. State* (Alaska App. 1992), 843 P.2d 1254 (discussing degree of certainty required to open or search a closed "single-purpose" container).

■ A trial court's ruling on a motion to suppress will not be reversed on review unless that ruling is manifestly erroneous. (*People v. Spann* (1992), 237 Ill. App. 3d 705, 711.) Warrantless searches are presumptively unreasonable unless certain limited exceptions apply. (*People v. Rinaldo* (1980), 80 Ill. App. 3d 433, 434.) Prior to the search of a car, the police must obtain a search warrant unless the circumstances fall within an exception to the warrant requirement such as probable cause. (*United States v. Ross* (1982), 456 U.S. 798, 809, 72 L. Ed. 2d 572, 583-84, 102 S. Ct. 2157, 2164-65.) To establish probable cause to search an automobile, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that contraband was present in the automobile. (*People v. Smith* (1983), 95 Ill. 2d 412, 419.) "Stopping a vehicle for a minor traffic violation does not, by itself, justify a search of the detainee's person or vehicle. The officer must reasonably believe that he is confronting a situation more serious than a routine traffic violation" to do so. (*Penny*, 188 Ill. App. 3d at 502.) Mere suspicion or curiosity is not enough to justify a search, and an officer's authority to investigate a traffic violation may not serve as a subterfuge to obtain other evidence based on suspicion. *Penny*, 188 Ill. App. 3d at 502.

Here, there is no contention that the officer at the outset had any reason to believe that he was dealing with anything more than a routine traffic stop or that the vehicle contained contraband. There was initially no basis for a search of the vehicle. There is also no argument made that the officer intended to make a limited *Terry* search for weapons out of concern for his safety. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The officer conceded that he did not believe the little wooden box contained any weapon and expressed no fear for his safety. It is highly significant that the testimony showed that no other suspicious or incriminating circumstances were present at the time he either requested the box or (according to defendant) took the box from defendant's pocket. Our review therefore focuses on whether the officer had probable cause to take control of the container and then search it solely because in his experience he had frequently seen such boxes contain controlled substances.

■ Assuming that the officer could see the wooden box in defendant's shirt pocket, certain requirements must be met to seize or search an item in plain view: (1) the initial intrusion which brings

the police within the plain view of the article itself must be lawful; and (2) there must be a sufficient nexus between the item to be searched and criminal activity, that is, there must be a showing that there was probable cause to believe that the item contained evidence of criminal activity. *People v. Williamson* (1993), 241 Ill. App. 3d 574, 581-83.

■ In the present case, the officer was legitimately in a position to view the box as a result of the traffic stop. However, despite the officer's suspicion that the wooden box was likely to contain contraband, in the absence of additional incriminating circumstances, we are not persuaded that the box was sufficiently distinctive so as to announce its contents. While there was a chance that it could contain cannabis, there was also an equally plausible chance that it could have contained "innocent" objects such as ordinary tobacco or even thumbtacks (see *Williamson*, 241 Ill. App. 3d at 582-83 (applying *Penny*, court found no probable cause to search based on officer's experience that ordinary prescription bottle was likely to contain contraband)).

Other decisions have reached similar conclusions where the appearance of the container alone was not sufficiently distinctive to show that its contents were contraband and therefore to support probable cause for a warrantless search. (See, *e.g., People v. Wiest* (1993), 246 Ill. App. 3d 96, *appeal allowed* (1993), 153 Ill. 2d 557 (officer's prior experience that 35-mm film container was commonly used for illicit drugs did not support probable cause to open container; followed *Penny*); see also *People v. Gulley* (1982), 111 Ill. App. 3d 1091 (black opaque, unlabeled, plastic container which rattled when shaken was opened out of suspicion or curiosity rather than based on probable cause despite officer's information from unidentified informant that defendant may have been involved with drugs); *Rinaldo*, 80 Ill. App. 3d 433 (police search of sealed box found in defendant's trunk was unjustified in absence of warrant, was nonconsensual and not part of inventory procedure or on the basis of plain view where police had no firsthand knowledge of content of box despite informant's representation that there would be contraband inside).) "Probable cause requires more than simply having seen an item associated with criminal activity on an earlier occasion." *Williamson*, 241 Ill. App. 3d at 583.

The State argues that *People v. Smith* (1983), 95 Ill. 2d 412, is sufficiently similar to support a finding of probable cause in the present case. In *Smith*, the officer stopped the vehicle because it lacked a valid safety-inspection sticker. The officer smelled alcohol on the defendant's breath and observed what was an open bottle of beer.

The court found it reasonable that the officer should then enter the passenger compartment to inspect the bottle and search for alcohol. Before entering the vehicle, he noticed a small wooden box which he recognized from his experience as a "one-hitter box" commonly used to carry cannabis. He also immediately observed a hypodermic syringe lying on the floor next to the box. The court held that "[f]inding the hypodermic syringe and the 'one-hitter box' gave the officer probable cause to believe that the vehicle contained drugs" and therefore under *Ross* he could search the vehicle and any closed containers carried in it that might hold drugs or drug-related paraphernalia. (*Smith*, 95 Ill. 2d at 420.) Thus, the officer's search of the "one-hitter box" was permissible under the automobile exception to the warrant requirement. (95 Ill. 2d at 420.) We find *Smith* distinguishable and thus inapplicable because in *Smith* there were other indices of unlawful activity or contraband in addition to the officer's seeing the one-hitter box to support a finding of probable cause to search. We emphasize too that *Smith* did not specifically hold that the box was so unique or distinctive that viewing it alone would support a finding of probable cause to search it under the "single-purpose container" doctrine which the State seems to be urging as applicable here.

Similarly misplaced we believe is the State's reliance on the plurality decision in *Texas v. Brown* (460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535), where the Court concluded that a police officer did not violate the fourth amendment in seizing an opaque party balloon knotted near the tip which fell from the driver-defendant's hand when he was stopped at a routine driver's license checkpoint. The officer also saw in the open glove compartment plastic vials, a quantity of loose white powder, and an open bag of party balloons. Based on his prior experience that it was common for balloons to be used in packaging narcotics and his observation of the contents of the glove compartment, the officer had probable cause to believe that the tied-off, uninflated balloon in the defendant's hand contained an illicit substance. *Texas v. Brown* is thus distinguishable because (1) the packaging (tied-off, uninflated balloon) was distinctive to the drug trade, and (2) the police had corroborating evidence. See *Williamson*, 241 Ill. App. 3d at 582.

Following the rationale of *Penny*, *Williamson*, and *Wiest*, we conclude that the officer lacked probable cause to search the wooden box and the trial court should have suppressed the evidence derived from that search. Because the subsequent search of the vehicle and, in particular, the duffel bag stemmed from the unlawful arrest—which itself was based on the evidence impermissibly obtained from

the wooden box—the subsequent search was also unlawful. The State maintains that the evidence that was later found after the search of the box was lawfully obtained incident to the arrest of defendant. Defendant was placed under arrest immediately after the officer opened the box when defendant was ordered out of the car. However, since the arrest was made on the basis of evidence impermissibly obtained from the search of the wooden box, the arrest itself was unlawful and cannot support a further search of the automobile incident to arrest pursuant to *People v. Kalivas* (1991), 207 Ill. App. 3d 415, as the State argues. Rather, we view the evidence subsequently found in the automobile as the inadmissible tainted fruit of the unlawful arrest. See *People v. Wilson* (1975), 60 Ill. 2d 235.

Evidence must be excluded as "fruit of the poisonous tree" if it is discovered by the exploitation of illegal police conduct. (*People v. Pettis* (1989), 184 Ill. App. 3d 743, 751, citing *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) The State does not now argue that this challenged evidence was obtained from an independent source or by valid consent. No *Miranda* warnings were given when defendant was arrested, nor was defendant advised that he did not have to consent to the search at the scene. There were no intervening circumstances which indicate that defendant had freely given consent to a further search of the car so as to dissipate the taint of the initial illegal search. (See *People v. Vought* (1988), 174 Ill. App. 3d 563, 572-73.) The evidence from the subsequent search should also have been suppressed.

We hold that the trial court's denial of defendant's motion to suppress was manifestly erroneous. Since the State cannot prevail on remand without the evidence that we find should have been suppressed, we reverse defendant's conviction outright. (*People v. Woods* (1993), 241 Ill. App. 3d 285, 290.) Consequently, there is no double jeopardy problem to consider. See, *e.g.*, *People v. Villareal* (1990), 201 Ill. App. 3d 223; *People v. Stofer* (1989), 180 Ill. App. 3d 158.

Defendant's conviction and sentence are reversed.

Reversed.

INGLIS, P.J., and GEIGER, J., concur.