THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CARMEL R. HILT, Defendant-Appellee.

Second District   No. 2—97—0656

Opinion filed July 23, 1998.

122

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Daniel J. Polatsek, both of State Appellate Defender's Office, of Elgin, and Kathleen T. Zellner, of Kathleen T. Zellner & Associates, of Naperville, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Carmel Hilt, was charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1994)) and possession of drug paraphernalia (720 ILCS 600/3.5 (West 1994)) after rock cocaine and drug paraphernalia were found in the car in which she was riding. The trial court granted her motion to quash her arrest and suppress the evidence obtained from the car. The State appeals, contending that police officers had probable cause to search the car or, alternatively, the driver consented to the search.

Evidence at the suppression hearing showed that Vernon Hilt, defendant's husband, had owned a 1988 Dodge Omni. On April 3, 1995, he bought a 1985 Ford Tempo at Joyce Pontiac. Joyce agreed to transfer the plates to the Tempo.

On May 27, 1995, defendant and her husband were in the area of Second and Loucks Streets in Aurora about 3 a.m. Vernon Hilt was driving the Tempo, and Milton, a friend of defendant, was with them. Milton asked the Hilts to drop him off at an apartment complex on Second Street, which they did. After leaving the complex, Vernon Hilt drove west on Second Street and stopped at a stop sign. As he was signaling for a left turn, he noticed a marked Aurora police car behind him.

The squad car was occupied by Officer John Pavlinec, who was pa-

trolling the area with his partner, Virgil Null. Their patrol area included the Woodlands Apartments. About 3 a.m., Pavlinec had seen a car leave the Woodlands parking lot. The car attracted his attention because he did not recognize it and because he knew that drug trafficking often took place in the area at that hour. He thus "ran a 28," or a license plate check, on the car and was informed that the plates were registered to a different car and were expired. He decided to effect a traffic stop.

Pavlinec approached the passenger's side of the car while Null approached the driver's side. Pavlinec shined a flashlight toward the car to check for weapons and contraband. As he did so, he saw a knotted piece of a baggie on the car's rear floorboard.

Pavlinec testified that in his experience based on having made 50 to 100 drug arrests, drug dealers often packaged cocaine by tying a knot in a corner of a plastic bag, then tearing off the rest of the bag to make a very small package. Thus, his observation of the torn and knotted baggie increased his suspicion. He believed that the baggie was a container for crack cocaine.

At this time, Null was speaking with the car's driver. Pavlinec then asked both the driver and defendant to get out and go to the rear of the car. He asked both if they had purchased cocaine or knew where the baggie had come from. Both responded in the negative.

According to Pavlinec, he then asked for and received permission to search the car. Defendant and her husband denied that they were asked for permission to conduct a search. In any event, Pavlinec searched the car. In the glove box, he saw what he believed to be a crack pipe. When asked, defendant admitted that the crack pipe was hers. Pavlinec arrested her for possession of drug paraphernalia. He then resumed his search and found a small rock-like substance on the passenger's side of the car's front floorboard.

After defendant was arrested, Null explained to the driver why he had been stopped. Vernon Hilt explained that the plates had recently been changed over and produced the form documenting the transfer of the plates.

The trial court granted the motion to quash and suppress. The court found that the initial stop was proper. However, the court ruled that the torn baggie was not obviously contraband or evidence of a crime. Thus, Pavlinec had only a "hunch" that a crime had occurred or was about to occur. The court further ruled that, based on the totality of the circumstances, any consent to search was not free and voluntary. Finally, the court rejected the contention that the drugs would inevitably have been discovered because it was clear that no one was going to be arrested for a license plate violation.

The State filed a certificate of impairment and a timely notice of appeal. On appeal, the State advances several reasons why the search was proper. The State argues that Pavlinec's observation of the torn baggie in plain view gave him probable cause to search the car under the automobile exception to the fourth amendment's warrant requirement. Alternatively, the State contends that Pavlinec obtained a valid consent to search or that the contraband would inevitably have been discovered in a search incident to arrest. We agree with the first contention.

■ A trial court's ultimate determination of the reasonableness of a warrantless search is reviewed *de novo. Ornelas v. United States,* 517 U.S. 690, 698-99, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). However, the court's resolution of factual issues is entitled to deference on review and will not be disturbed unless manifestly erroneous. *People v. Perez,* 288 Ill. App. 3d 1037, 1043 (1997).

■ A warrantless search of a vehicle is proper where police have probable cause to believe that it contains contraband. *People v. Schrems,* 224 Ill. App. 3d 988, 995 (1992). Where an item is seen in plain view, it must be " 'immediately apparent' " that the object is contraband or evidence of a crime before the object's presence will establish probable cause for a search. *Texas v. Brown,* 460 U.S. 730, 737, 75 L. Ed. 2d 502, 510, 103 S. Ct. 1535, 1540-41 (1983) (opinion of Rehnquist, J., joined by Burger, White, and O'Connor, JJ.), quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 29 L. Ed. 2d 564, 583, 91 S. Ct. 2022, 2038 (1971) (opinion of Stewart, J., joined by Douglas, Brennan, and Marshall, JJ.).

Citing *Texas v. Brown,* the State argues that the totality of the circumstances gave Pavlinec probable cause for the search. The State contends that the knotted corner of a baggie was a "single-purpose container" which could not have had any purpose other than to carry cocaine. Pavlinec testified that he had seen baggies used in such a manner approximately 50 times. Thus, the State maintains that his observation of the baggie, combined with his knowledge of drug packaging and his knowledge that drug dealing often occurred in the area in the early morning hours, combined to provide the requisite probable cause.

Defendant responds that a plastic bag may have uses other than the packaging of narcotics. He cites cases in which courts held that containers such as a prescription bottle, a film canister, and a wooden box did not provide probable cause to believe that drugs were present because these objects can be used to carry legal substances as well.

In *Brown,* an officer made a traffic stop. After asking the driver for his license, the officer observed a tied-off party balloon in the

driver's hand. He was aware from his previous participation in drug arrests that balloons tied in similar fashion were frequently used to carry drugs. When defendant opened the glove compartment, the officer saw vials containing white powder. The Supreme Court held that the officer possessed probable cause to believe that contraband was present. The court noted that "the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer." *Brown*, 460 U.S. at 743, 75 L. Ed. 2d at 514, 103 S. Ct. at 1544.

In *People v. Smith*, 95 Ill. 2d 412 (1983), an officer saw in plain view what he recognized as a "one-hitter box," a device frequently used for carrying marijuana. The observation of the box, as well as a syringe and an open alcohol container in the car, established probable cause to believe that drugs were present. *Smith*, 95 Ill. 2d at 420; see also *People v. Bibbs*, 176 Ill. App. 3d 521, 524 (1988) (mirrored tray with razor; green, leafy substance; and white, powdery substance provided probable cause).

Other cases have held that the observation of inherently innocuous objects did not provide probable cause to believe that they contained contraband. See *People v. Evans*, 259 Ill. App. 3d 650, 655 (1994) (wooden box); *People v. Wiest*, 246 Ill. App. 3d 96, 100-01 (1993), *rev'd on other grounds sub nom. People v. Bailey*, 159 Ill. 2d 498 (1994) (film canister); *People v. Williamson*, 241 Ill. App. 3d 574, 583 (1993) (prescription bottle); *People v. Penny*, 188 Ill. App. 3d 499, 503 (1989) (package wrapped in opaque plastic); *Jackson v. State*, 669 N.E.2d 744, 749 (Ind. App. 1996) (prescription bottle). The courts in those cases held that the objects were inherently innocuous and could be used for many legitimate purposes. The *Penny* court stressed that the package was not distinctive. *Penny*, 188 Ill. App. 3d at 505. Similarly, the *Evans* court observed that nothing about the wooden box "was sufficiently distinctive so as to announce its contents." *Evans*, 259 Ill. App. 3d at 657.

■ We agree with the State that the present case is more like *Brown* than the *Penny-Evans* line of cases. Unlike in the latter cases, the container here was distinctive enough to announce that it formerly contained narcotics. As Justice Powell noted in his concurring opinion in *Brown*, "We are not advised of any innocent item that is commonly carried in uninflated, tied-off balloons such as the one *** seized." *Brown*, 460 U.S. at 746, 75 L. Ed. 2d at 517, 103 S. Ct. at 1546 (Powell, J., concurring).

Also similar to this case is *State v. Courcy*, 48 Wash. App. 326, 739 P.2d 98 (1987). There, the suspect was seen with a paper bindle. The arresting officer testified that he had seen many similar bindles in his

experience and that they always contained drugs. *Courcy*, 48 Wash. App. at 329, 739 P.2d at 100. Thus, the court found that it fit within the "single-purpose container" doctrine. *Courcy*, 48 Wash. App. at 329-30, 739 P.2d at 100-01.

We note that this case is distinguishable from *Commonwealth v. Houston*, 456 Pa. Super. 105, 689 A.2d 935 (1997). There, the court held that a baggie with the corners torn off did not establish probable cause to search the vehicle in which it was found. However, in that case there was no evidence of the character of the neighborhood where the arrest occurred or of the officers' previous experience with similar containers. In fact, one officer specifically testified that he had not planned to search the car on that basis alone. Here, by contrast, Officer Pavlinec knew that drug transactions were common in the area and had previously observed drugs packaged in similar containers.

The totality of the circumstances here—the presence of the unique container, the officer's previous experience with such containers, and the fact that the stop occurred in the early morning hours in an area known for drug transactions—provided the officers with probable cause to search defendant's car. Thus, the trial court erred in suppressing the fruits of the search. Because of our disposition of this issue, we need not determine whether the search was justified by consent or as a search incident to arrest.

The judgment of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GEIGER, P.J., and INGLIS, J., concur.