STATE OF NEBRASKA, APPELLANT, V. BRIAN RUNGE, APPELLEE.
601 N.W. 2d 554

Filed October 5, 1999.    No. A-99-667.

Gary E. Lacey, Lancaster County Attorney, and Patrick F. Condon for appellant.

Dennis R. Keefe, Lancaster County Public Defender, and Kristi J. Egger Brown for appellee.

MUES, Judge.

## INTRODUCTION

Pursuant to Neb. Rev. Stat. § 29-824 (Cum. Supp. 1998), the State of Nebraska appeals an order of the district court for Lancaster County suppressing evidence seized without a warrant from Brian Runge's person by Lancaster County Deputy Sheriff Michael Scofield on July 29, 1998.

## STATEMENT OF FACTS

On July 29, 1998, at approximately 2 a.m., Scofield was east-bound on O Street in Lincoln in a marked cruiser. He was monitoring radio traffic when he heard a dispatch regarding a hit-and-run accident at North 31st and P to Q Streets, which was the general area he was in. The dispatch stated that the driver of the vehicle had run from the scene on foot. Within a few minutes, Scofield observed a white male run to the south onto O Street from the north approximately one and a half to two blocks from the accident coming from the general direction of where Scofield understood the accident to have occurred. The party wore a tank top T-shirt and nylon running shorts and was "sweating profusely." The party was looking behind him as he stopped there on the corner. Scofield testified that he thought this was possibly the hit-and-run driver, so he pulled over and got out of his vehicle, making contact with the party at the northeast corner of 29th and O Streets. The party stopped upon Scofield's approach. Scofield asked the party, later identified as Runge, for identification. Runge eventually produced a nylon wallet and handed it to Scofield. Scofield could not recall if the wallet was produced from Runge's shorts or the fanny pack he was wearing. In any event, the fanny pack was opened at some point.

According to Scofield, Runge was compliant in getting his wallet, took no evasive action, and made no threats. Scofield did not see or suspect that Runge was carrying weapons and had no knowledge of any prior drug offenses or violent tendencies regarding Runge.

Scofield explained that the area was fairly well lit by overhead street lights and that he observed a baggie and a black film canister in the fanny pack. On cross-examination, Scofield clarified that he first saw several baggies. Scofield also testified that he did not observe a camera in the fanny pack. Scofield immediately reached into the pack and took control of a baggie and the film canister because, according to him, he recognized them as types of packaging often used for marijuana and other drugs. Thus, he thought the items may contain "marijuana and other drugs," so he secured them so as not to lose possession of them. Scofield admitted that at the time he first observed the baggies, he could not see what, if anything, was in them. He also admitted that he may have pulled one or more of the baggies out before he observed the film canister. Thus, Scofield admitted that the only thing he recalled looking at that aroused some suspicion at first was the baggies. Then, at some point, he observed the film canister. It was Scofield's opinion that Runge was under the influence of alcohol.

Scofield is a 19-year veteran of the sheriff's department. He was certified by the Nebraska Law Enforcement Training Center in 1977 and has had specialized training in different areas since that time. He also worked for 2½ years as a narcotics officer in 1994 and 1995, during which time he had the opportunity to see and observe how marijuana was packaged for sale on the street. Scofield has been involved with 100 to 150 narcotics cases.

After Scofield took control of the items, there was a brief conversation regarding the contents of the baggie and what Runge was doing in the area. Runge explained that he was coming from a friend's house and then attempted, but failed, to grab for Scofield's hand and then took off running. He then hid in the backyard of a residence where Scofield recontacted him, handcuffed him, and took him back to the cruiser. Scofield removed the fanny pack from Runge after he was seated in the cruiser. Scofield asked Runge if Scofield could look in the pack, and according to Scofield, Runge replied in the affirmative. When Scofield opened the fanny pack, he observed two small packages of what Runge told him was methamphetamine and a small scale. Scofield then transported Runge to jail.

Runge was charged with possession of methamphetamine in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1998). He filed a motion to suppress all evidence seized. At the hearing on the motion, Scofield identified exhibits 2 and 3, a film canister and a baggie containing marijuana, which came from exhibit 1, Runge's fanny pack. Scofield was not sure whether exhibit 3 was the baggie he removed when he first contacted Runge or whether it was another of the baggies which "seemed to have residue in them." He explained that he observed additional baggies in the fanny pack and that he did not "recall exactly if the marijuana was found right away or if it was in some of the other baggies that [he] observed originally." He also identified exhibits 4 and 5 as the two packages of methamphetamine.

Scofield testified that during his experience as a narcotics agent, he came into contact with items such as exhibits 2 and 3 and that these items were often used to package or carry marijuana in. Based on this prior training and experience, he explained that at the time he observed the baggies, he believed they could contain contraband.

The State alleged below that the initial seizure of the one baggie and film canister was valid based on either the plain view doctrine or the inevitable discovery exception to the warrant requirement. The trial court sustained Runge's motion, finding that the incriminating character of the objects observed in Runge's fanny pack were not immediately apparent and that thus, they were unlawfully seized. The trial court observed:

> Scofield testified that he never saw what was in the baggies until after he seized it. In fact he is not sure that the baggy he seized contained any thing at all let alone contraband. Scofield had no reason to suspect defendant was carrying drugs. He contacted defendant to investigate a possible hit and run. He had no information about the defendant what so ever. All he had were the bags. Plastic sandwich bags, standing alone, are at best undisctictive [sic] containers. The same is true of the film canister. It is used to carry film. The plain view doctrine is not applicable here.

The court also found that there was no evidence that Runge's arrest was for anything other than drug possession. Thus, it concluded that there was no evidence that if the illegal seizure had

not occurred, the fanny pack would have inevitably been searched incident to an arrest for the hit and run. The State appeals.

## ASSIGNMENT OF ERROR

Restated, the State alleges that the district court erred in finding that the plain view doctrine did not apply.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *In re Interest of Andre W.*, 256 Neb. 362, 590 N.W.2d 827 (1999); *State v. Matthews*, 8 Neb. App. 167, 590 N.W.2d 402 (1999). In determining whether a trial court's ruling on a motion to suppress is clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Matthews, supra.*

## ANALYSIS

The Fourth Amendment to the U.S. Constitution and the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government, including police officers. *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). However, there are several categories of searches considered reasonable under the Fourth Amendment even though conducted without a warrant. In the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement. *State v. Craven, supra*; State v. Butzke, 7 Neb. App. 360, 584 N.W.2d 449 (1998).

To determine whether any physical evidence is constitutionally inadmissible, a court must first examine the circumstances surrounding the officer's stop of the vehicle, for, if the initial stop was unconstitutional, any subsequent search and evidence obtained through that search are constitutionally inadmissible as the "fruit of the poisonous tree." *State v. Vermuele*, 241

Neb. 923, 492 N.W.2d 24 (1992), citing *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992), citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Evidence must be excluded as "fruit of the poisonous tree" if it is discovered by the exploitation of illegal police conduct. *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872, 197 Ill. Dec. 650 (1994), quoting *People v. Pettis*, 184 Ill. App. 3d 743, 540 N.E.2d 1097, 133 Ill. Dec. 231 (1989), citing *Wong Sun v. United States, supra*.

The seizure of the baggie and the film canister from Runge's fanny pack precipitated the chain of events leading to Runge's seizure and the subsequent search of his fanny pack which disclosed the methamphetamine which is the basis for the present charge. If that seizure was illegal, the evidence seized and all evidence flowing from it must be suppressed. See *People v. Evans, supra*. Thus, we focus on Scofield's initial "grabbing" of the baggie and the film canister which the State contends were properly obtained under the plain view doctrine. As hereafter more thoroughly discussed, one of the prerequisites of the plain view doctrine is that the officers lawfully be in a position from which they can view the object. See, *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987); *State v. Craven, supra*.

*Initial Encounter.*

There are three levels of police-citizen encounters: (1) a voluntary stop with noncoercive questioning; (2) an investigatory stop based upon reasonable suspicion that criminal activity is afoot, where officers use the least intrusive methods reasonably available to rapidly dispel or verify their suspicions; and (3) a full-blown arrest in which the citizen is typically taken into the custody of the officer. *State v. Tierney*, 7 Neb. App. 469, 584 N.W.2d 461 (1998). See *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), *cert. denied* 510 U.S. 836, 114 S. Ct. 113, 126 L. Ed. 2d 78. At the point that Scofield observed the baggies, Runge was not under arrest. At most, Scofield was conducting an investigatory stop. The test to determine if an investigatory stop was justified is whether the police officer had a reasonable suspicion, based on articulable facts, which indicated that a crime had occurred, was occurring, or was about to occur

and that the suspect might be involved. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992); *State v. Hiemstra*, 6 Neb. App. 940, 579 N.W.2d 550 (1998).

An investigatory stop must be justified by an objective manifestation, based upon the totality of the circumstances, that the person stopped has been, is, or is about to be engaged in criminal activity. *State v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988). The factual basis for an investigatory stop need not arise from an officer's personal observation, but may be supplied by information acquired from another person. When the factual basis is supplied by another, the information must contain sufficient indicia of reliability. *Id.*

Scofield heard a dispatch at approximately 2 a.m. regarding a hit-and-run accident where the driver ran off on foot. Shortly thereafter, Scofield observed Runge running while looking back over his shoulder less than two blocks from the accident scene. According to Scofield, he did not order Runge to stop. In any event, assuming without deciding that Runge was detained by Scofield during this initial encounter, I conclude that Scofield had reasonable suspicion to approach Runge and to use the least intrusive means necessary to rapidly dispel or verify his suspicions. I believe that asking Runge for identification and speaking to him about his purpose in the area was a proper method to accomplish this task and that therefore, Scofield was lawfully in a position to observe the baggies.

However, that does not end my analysis. I must determine if Scofield was justified in seizing the baggies and film canister he observed in Runge's fanny pack.

*Plain View.*

As stated, the State asserts that the seizure was justified based upon the plain view doctrine. Indeed, the plain view doctrine is an exception to the warrant requirement. See *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). The plain view doctrine permits police officers to seize an object without a warrant if they are lawfully in a position from which they can view the object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object. See *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). As

discussed above, Scofield was lawfully in a position on the street from which he could observe the baggies in Runge's fanny pack. However, the district court found that the incriminating character of the baggies was not immediately apparent. On appeal, the State, relying upon *Texas v. Brown*, 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983), asserts that due to Scofield's training and experience, there was immediate recognition in the instant case.

In *Texas v. Brown, supra*, the U.S. Supreme Court concluded that a police officer did not violate the Fourth Amendment in seizing an opaque party balloon knotted near the tip which fell from the defendant's hand when he was stopped at a routine driver's license checkpoint. The officer also saw in the open glove compartment plastic vials, a quantity of loose white powder, and an open bag of party balloons. Based on his prior experience that it was common for balloons to be used in packaging narcotics and his observation of the contents of the glove compartment, the Court concluded that the officer had probable cause to believe that the knotted, uninflated balloon in the defendant's hand contained an illicit substance. The Court concluded that the "fact that [the officer] could not see through the opaque fabric of the balloon is all but irrelevant: the *distinctive character* of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer." (Emphasis supplied.) 460 U.S. at 743.

The Court in *Texas v. Brown* observed that the " 'immediately apparent' " requirement of the plain view doctrine "was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." 460 U.S. at 741. The *Texas v. Brown* Court observed that " '[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.' " (Emphasis omitted.) 460 U.S. at 741-42, quoting *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

In *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987), the U.S. Supreme Court revisited the issue.

There, the Court addressed whether moving an object to observe a serial number to determine if the equipment had been stolen was a reasonable search. It concluded that if the moving of the equipment was a valid seizure under the plain view doctrine, then it was also a legally valid search. The Court concluded that it was not a valid seizure under the plain view doctrine because the search was based solely on reasonable suspicion, not probable cause.

> We now hold that probable cause is required. To say otherwise would be to cut the "plain view" doctrine loose from its theoretical and practical moorings. . . . No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises.

480 U.S. at 326-27.

This reasoning has been adopted by the Nebraska Supreme Court in *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). " 'Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.' " *Id.* at 608, 571 N.W.2d at 618, quoting *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993).

Thus, in order for the initial seizure of the baggie or film canister to be justified, Scofield had to have probable cause to seize the baggies from Runge's fanny pack, i.e., it must have been immediately apparent to Scofield that the baggies contained incriminatory evidence. I must make this determination of probable cause de novo. See *In re Interest of Andre W.*, 256 Neb. 362, 590 N.W.2d 827 (1999); *State v. Matthews*, 8 Neb. App. 167, 590 N.W.2d 402 (1999).

Probable cause means a fair probability that contraband or evidence of a crime will be found. *State v. Craven, supra.* Probable cause is determined by a standard of objective reasonableness, i.e., whether the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. *Id.*

See *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). The question is whether seeing baggies protruding from a fanny pack under the facts and circumstances known to Scofield was sufficient to warrant a person of reasonable prudence to believe that the baggies contained contraband. I agree with the trial court that probable cause did not exist for this warrantless seizure.

To review, Scofield observed Runge at 2 a.m. close to downtown Lincoln, in jogging shorts and a tank top. Runge was sweaty, and Scofield had seen him running. The encounter occurred in the general area of a hit-and-run accident. In the course of obtaining identification from Runge, Scofield observed several baggies in Runge's open fanny pack. Scofield could not see what, if anything, was in the baggies. Scofield did not suspect Runge of being violent or that drug activity was involved before seeing the baggies. There is no evidence that this area was one of high drug activity. Runge was compliant, not evasive, and nonthreatening. There is no evidence that any "pat down" was occurring out of concern for Scofield's safety. Scofield first became "suspicious" of criminal activity upon observing the baggies.

The State does not attempt to justify the warrantless seizure upon Scofield's observance of marijuana in the baggies. It is the container alone—baggies—that led to Scofield's "suspicion" of possible drugs. A reasonable suspicion is not sufficient to support a seizure under the plain view doctrine. See *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987).

In the present case, the trial court relied on the case of *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872, 197 Ill. Dec. 650 (1994), in reaching its decision. In *People v. Evans*, the Illinois Appellate Court concluded that an officer did not have probable cause to seize and search a 1½- by 2½-inch wooden box found in the shirt pocket of a defendant stopped for speeding. The defendant was wearing a shirt with a single pocket on the left side. After writing the defendant a traffic citation, the officer saw the box and asked the defendant what was in the pocket. The officer claimed the defendant handed him the box upon his request. The defendant testified that he did not immediately

respond and that the officer reached into the pocket and pulled out the wooden box. In any event, the box appeared to the officer to be a " 'stash box' " used to carry illicit substances. *Id.* at 653, 631 N.E.2d at 874, 197 Ill. Dec. at 652. The officer testified that he had come into contact with this type of box in over 50 situations and that in each case, the box did not contain tobacco. He opened it and observed what he suspected was cannabis, which led to the discovery of additional cannabis in the vehicle. The officer had not observed anything unusual about the defendant's vehicle or seen any illicit substances or residue therein. The defendant presented a similar box at the suppression hearing with evidence that he purchased the box from a tobacco shop and that it was used with a pipe for persons who only wanted to take one or two puffs of tobacco to satisfy a craving.

The defendant was charged with unlawful possession of a controlled substance. The trial court denied the defendant's motion to suppress, which was premised, inter alia, on the lack of probable cause to retrieve the closed box from the defendant's shirt pocket and open it.

The Illinois Appellate Court reversed, finding that the officer did not have probable cause to seize the box, because the "container was not one of those rare 'single-purpose' containers which by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance and the containers can reasonably have no legitimate purpose other than the concealment of contraband." 259 Ill. App. 3d at 655, 631 N.E.2d at 876, 197 Ill. Dec. at 654. The court reasoned that despite the officer's suspicion that the box would likely contain contraband, absent additional incriminating circumstances, there was no probable cause to seize the item.

The *People v. Evans* court noted that there was no contention that the officer had any reason to believe he was dealing with more than a traffic stop or the vehicle contained contraband and that there were no suspicious or incriminating circumstances present other than the traffic violation. There was no contention that the officer intended to make a limited *Terry* search for weapons out of concern for his safety. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The *People v. Evans* court found the facts presented were closer to several cited cases where the appearance of a container alone was not sufficiently distinctive to show that its contents were contraband and therefore to support probable cause for a warrantless intrusion. It distinguished *Texas v. Brown*, 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983), noting that in *Texas v. Brown*, there was a knotted, uninflated balloon distinctive to the drug trade plus the police had corroborating evidence, specifically observance of a package of empty balloons, several small plastic vials, and quantities of loose white powder in the glove box. See, also, *People v. Penny*, 188 Ill. App. 3d 499, 504, 544 N.E.2d 1015, 1018, 136 Ill. Dec. 240, 243 (1989) (rejecting that package wrapped in brown plastic fit within " 'single purpose container' " doctrine because it did not have sufficiently distinctive characteristics which would reasonably lead someone to believe it contained contraband). However, in *People v. Hilt*, 298 Ill. App. 3d 121, 698 N.E.2d 233, 232 Ill. Dec. 395 (1998), the Illinois Appellate Court reversed the trial court's decision and found that probable cause existed to justify a warrantless search of a car under the plain view doctrine where the officer had observed a knotted piece of baggie on the car's floorboard. The officer testified that drug dealers often packaged cocaine by tying drugs in the corner of a baggie, then tearing off the rest of the baggie. The appellate court held that the immediately apparent prong of the plain view doctrine was established. "Unlike in [*People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872, 197 Ill. Dec. 650 (1994), and *People v. Penny, supra*,] the container here was distinctive enough to announce that it formerly contained narcotics." 298 Ill. App. 3d at 125, 698 N.E.2d at 236, 232 Ill. Dec. at 398.

I believe that the present case is more like the circumstances in *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872, 197 Ill. Dec. 650 (1994), and the supporting cases cited therein, than the circumstances in *Texas v. Brown, supra*, and *People v. Hilt, supra*. See, also, *State v. Lembke*, 509 N.W.2d 182 (Minn. App. 1993). Granted, baggies and film canisters are used in the drug trade, and there may well be additional incriminating circumstances in another case which together with viewing such objects would create probable cause to seize them without a

warrant. However, these objects are not distinctive enough, standing alone, to announce drug contents. In the vernacular of the foregoing cases, a baggie certainly does not fit the definition of a "single purpose container," and there was nothing else about these items that was sufficiently distinctive to announce their contents as contraband.

Regarding any "additional incriminating circumstances," *People v. Evans*, 259 Ill. App. 3d at 657, 631 N.E.2d at 877, 197 Ill. Dec. at 655, they are these—Runge was running in jogging attire wearing a fanny pack at an early morning hour in the general vicinity of a reported hit-and-run accident. At the time Scofield saw the baggies, he knew of no additional incriminating circumstances related either to Runge's connection with the hit and run or any drug related activity. Whether Scofield properly encountered Runge is not the pivotal issue. The issue is the existence of probable cause to seize an object from Runge. The foregoing circumstances simply are not sufficient, in my judgment, to lead a person of reasonable prudence to believe that the baggies seen in Runge's fanny pack contained illegal drugs.

The legality of a seizure under the plain view doctrine depends upon the incriminating character of an object being immediately apparent. See *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). There need not be certainty in that regard, see *Texas v. Brown, supra*, but reasonable suspicion is not enough, see *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987). Probable cause is the touchstone in determining the immediately apparent requirement of the plain view doctrine. See *Texas v. Brown, supra.* The seizure of the baggie and the film canister from Runge's fanny pack was not grounded on facts and circumstances known to Scofield supporting a reasonable belief that Runge was carrying illegal drugs or that contraband would be found. Rather, it was based on a suspicion—an apparent intuition—stemming from Scofield's general experience that baggies are often involved in carrying illegal drugs. Therefore, based on the record before me, I conclude that probable cause to seize the baggie and the film canister did not exist. Instead, the seizure here falls in the category of an "excessively speculative seizure" prohibited by the Fourth Amendment. See *State v. Craven, supra.*

*Inevitable Discovery.*

The State does not assign as error, nor does it argue, that the trial court erred in rejecting the inevitable discovery ground as justification for the seizure of the contraband at issue. Thus, I do not deem it necessary to address that issue to resolve this appeal.

## CONCLUSION

The district court's order suppressing the evidence procured as a result of the warrantless seizure is affirmed.

AFFIRMED.