**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence M. BURNETT, Jr.,
Defendant-Appellant.**

No. 85–5219.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 28, 1985.

Decided May 27, 1986.

Jeffrey S. Weiner (argued), Robert G. Amsel, Weiner, Robbins, Tunkey and Ross, Miami, Fla., for defendant-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., James Zerhusen (argued), Asst. U.S. Atty., Covington, Ky., for plaintiff-appellee.

Before KEITH and MILBURN, Circuit Judges and HIGGINS, District Judge *.

HIGGINS, District Judge.

The appeal in this case arises from the early morning stop and arrest of the appel-

---

* The Honorable Thomas A. Higgins, Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

lant, Lawrence M. Burnett, Jr., and his wife, and the subsequent seizure of 245 grams of cocaine from the trunk of the wife's rental car.

## I.

Shortly before midnight on December 23, 1983, Lawrence M. Burnett, Jr., and Gabriella E. Voelker Burnett, his wife, arrived at the Budget Rent-a-Car booth in Terminal B of the Greater Cincinnati Airport, Boone County, Kentucky. A rental car had been reserved under Mrs. Burnett's maiden name of Voelker. Mr. Burnett tried to rent the automobile but the Budget agent determined that Mr. Burnett had been drinking and refused to rent the car to him. Mr. Burnett became upset and was abusive toward the agent. To defuse the situation, the agent agreed to rent the car to Mrs. Burnett (in the name of Voelker) with the stipulation that only she would drive.

While the rental papers were being signed, the Budget agent gave the keys to the skycap who transported the Burnetts' luggage to the rental car. He placed all of the luggage in the trunk and testified that he believed all the suitcases were closed when he shut the trunk. The keys were placed in the ignition, and the skycap returned to the airport.

After signing the necessary papers, the Burnetts proceeded to their car. They had trouble locating it and returned to the Budget counter for help. The agent led them to their car and again stated that Mrs. Burnett was the only one who was to drive. Mrs. Burnett reassured the agent that she would drive. The agent returned to his counter inside the airport, but, before going inside, he glanced back at the Burnetts and saw Mr. Burnett getting into the driver's seat. The agent placed a call to the Cincinnati Airport Police and explained that he had rented the car to one person, but another person, who he believed had been drinking, was about to drive it away.

Officer Brady of the Cincinnati Airport Police responded to the call and intercepted the Burnetts within one minute. Officer Brady found the Burnetts' car stopped in the intersection of the entrance/exit of the BC rental return lot. The motor was running and the headlights were on. Mr. Burnett was in the driver's seat and Mrs. Burnett was in the front passenger's seat. When officer Brady pulled up, he used a spotlight attached to the exterior of his cruiser to illuminate part of the interior of the Burnetts' car. Officer Brady approached the car and was met by Mr. Burnett getting out of the driver's seat. A request was made for Mr. Burnett's driver's license and as Mr. Burnett reached for his wallet on the floorboard of the car, officer Brady used his handheld flashlight to illuminate the area where Mr. Burnett was reaching. Officer Brady saw a wallet and "a clear plastic bag which contained a quantity of a vegetable, green vegetable, leafy substance." Officer Brady reached in and seized the plastic bag of marijuana and arrested Mr. Burnett. Mrs. Burnett was also placed under arrest and both were transported to the airport police station.

Lieutenant Kegley arrived on the scene as backup for officer Brady. The car was impounded and Lieutenant Kegley drove the car to the fenced impoundment lot near the station. The Burnetts were read their *Miranda* warnings and were then placed in separate interview rooms. The paperwork process necessary for the transportation of the Burnetts to the Boone County detention facility was initiated. A search of Mr. Burnett was conducted and a small quantity of cocaine was found in a folded dollar bill placed inside a matchbook. Mr. Burnett was charged with possession of marijuana, possession of cocaine, and driving under the influence.

Pursuant to airport police regulations and as a courtesy to the rental agency, Lieutenant Kegley instructed officer Brady to remove and inventory all items and belongings from the car so that the Burnetts could have their belongings transported with them to the jail and Budget could have its car returned.

Officer Brady opened the trunk of the car and he and Lieutenant Kegley removed the luggage and carried it into the police

station to be inventoried. One of the suitcases was already open and officer Brady began his inventory search with that one. In the course of his inventory search of this suitcase, officer Brady discovered a sturdy, rigid green champagne box with the words "Dom Perignon" on it. The box had been opened previously but had been resealed with two pieces of scotch tape. The box was sturdy enough that officer Brady could not determine what was inside by merely squeezing it. However, by the weight and the sound made when the box was shaken, officer Brady determined that the box did not contain champagne. Officer Brady testified,

> I didn't know what it was, but I knew that the sound that it made was more like the sound of sugar or some granulated, powdered, whatever, substance. It definitely wasn't liquid, and there wasn't in there a bottle.
>
> \*    \*    \*    \*    \*    \*
>
> I thought that there was something in there that definitely wasn't champagne and that I had a duty to find out what, so that I could note that in my report.

Officer Brady opened the box and found what was later determined to be 245 grams of cocaine. The inventory search was stopped and a search warrant was sought and obtained to search the remaining items. No other contraband was found.

The appellant was charged in two counts under 21 U.S.C. § 841(a)(1) with possession of 245 grams of cocaine with intent to distribute and possession of 55 grams of marijuana with intent to distribute. A hearing to suppress the cocaine found in the champagne box was held before the magistrate for the Eastern District of Kentucky. The magistrate recommended that the appellant's motion to suppress the cocaine be sustained. The district court adopted the findings of fact made by the magistrate, but determined that the motion to suppress should be denied on grounds not raised by the parties or addressed by the magistrate. In short, the district court found that probable cause existed for the officers to search the Burnetts' automobile

upon discovery of the plastic bag of marijuana. The district court further found that "additional probable cause existed upon the finding on the person of the appellant, Burnett, a small quantity of cocaine." Relying on *U.S. v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) and *U.S. v. Steele*, 727 F.2d 580 (6th Cir. 1984), the district court concluded that the finding of the marijuana justified a search of every part of the vehicle and its contents that might conceal the object of the search. The district court further found it of no consequence that the search was delayed until the automobile was removed to the impounding lot. See *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The appellant filed a motion to reconsider the Court's order denying the motion to suppress and a request for an additional evidentiary hearing. The Court granted the request and referred the matter to the magistrate to determine whether the officer had probable cause to search the car. The hearing "shed little light" on the question and the magistrate again recommended that the evidence be suppressed. The district court concluded that its initial decision was correct and denied the motion to reconsider.

The appellant entered a conditional plea of guilty to Count I of the indictment [cocaine] but reserved his right to appeal the district court's orders denying his motion to suppress. Count II of the indictment was dismissed, and the indictment against Mrs. Burnett was also dismissed.

Appellant was sentenced to fifteen years imprisonment and a fine of $25,000.00. He was ordered to serve a period of ninety days with a special parole term of three years. The balance of the sentence was suspended and appellant was placed on probation for a period of five years upon release of custody.

## II.

On this appeal, the Court is asked to determine whether the finding of marijua-

na on the floorboard of a car is probable cause to search the entire vehicle, as well as a sealed package found in an open suitcase within the trunk.[1] The focal point of appellant's argument is that two ounces of marijuana found on the floorboard of the car indicates that the appellant is only a casual user of narcotics as opposed to a dealer. Consequently, it is argued that officer Brady had probable cause to search only the passenger area of the car and not the trunk. The appellant is asking this Court to burden the police with having to make another judgment call—whether a certain amount of marijuana, cocaine, or other drug found on a person or in some container makes the person a casual user or a dealer. Determining the existence of probable cause to search on the amount of contraband initially found is a line which need not and should not be drawn. Probable cause has never been defined quantitatively and the appellant's theory that "smaller is not necessarily bigger" must be rejected. From the long history of litigated drug cases, it is evident that neither the casual user nor the dealer fits any precise description or category.[2]

The issue before us has been addressed in detail by the Supreme Court of the United States in the case of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In *Ross*, the police received a tip that narcotics were located in the trunk of a car located at a specific place. The police waited until the driver had driven the car some distance before they stopped it and opened the trunk. Once inside the trunk, the police found a closed paper bag which they opened and the substance contained inside was determined to be heroin. The car was impound-ed and driven back to the police station. A police officer then searched the car without a warrant and found $3,200.00 in cash inside a zippered bag. A motion to suppress the heroin and the cash was made but denied by the district court. The Court of Appeals reversed. The Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe contraband is concealed somewhere within the car may conduct a warrantless search of the vehicle, including compartments and containers within the vehicle whose contents are not in plain view. This search can be no broader or narrower than a magistrate could legitimately authorize by warrant. Thus, if probable cause justifies the search of the lawfully stopped vehicle, it justifies the search of every part of the vehicle and the contents that may conceal the object of the search. *Ross*, 456 U.S. at 825, 102 S.Ct. at 2173, 72 L.Ed.2d at 594.

Under the *Ross* rationale, the search of appellant's trunk, resulting in the discovery of the champagne box, was lawful and justified. Officer Brady, based upon the information known to him, lawfully stopped the Burnetts' car. The marijuana package on the floorboard of the vehicle was in plain view and was legally seized by the officer. Once the contraband was found, officer Brady had every right to search the passenger area of the car, the trunk, and any and all containers which might conceal contraband. The fact that officer Brady subjectively decided he had no probable cause to search at that time is immaterial. *United States v. Ochs*, 595 F.2d 1247, 1256 (2nd Cir.1979), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). Con-

---

**1.** The appellant has raised other secondary issues which, in light of our decision, need not be reached, *i.e.,* whether the miniscule amount of cocaine found on the appellant's person subsequent to the car being impounded may be considered in determining whether probable cause existed and whether the warrantless search in this instance may be justified as an "inventory search".

**2.** Certainly this is demonstrated in the instant case. The appellant possessed both small and large amounts of controlled substances and any inference of appellant being only a casual user is negated by the presence of the large amount of cocaine. In any event, the Court finds the distinction between casual user and dealer immaterial in the context of this case with regard to the existence of probable cause.

traband was located and officer Brady, whether he knew it or not, could have searched the entire car. It is likewise immaterial whether the search was done at the initial stop or after the car was impounded at the airport police lot. *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); and *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Other decisions are in accord.

In *United States v. Orozco,* 715 F.2d 158 (5th Cir.1983), Robert Orozco was a passenger in a BMW that was lawfully stopped for speeding by police. During the stop, police observed a bag of marijuana in the glove compartment. Orozco and the driver were placed under arrest, and, believing more marijuana to be present, the police searched the entire passenger area and trunk of the car. More than a pound of marijuana and two weapons were found. Based upon the facts known to the officers at the time, the Court found that probable cause existed to search the trunk for more contraband. *Orozco,* 715 F.2d at 160. *See also United States v. Rickus,* 737 F.2d 360, 366–67 (3rd Cir.1984) (finding defendants wearing bullet proof vests and seeing a screwdriver, pliers, map, and flashlight in the car gave officers probable cause to search the car and the trunk); *United States v. Steele,* 727 F.2d 580 (6th Cir.1984) (finding 1200 pounds of cocaine in a blue van and seeing defendant make repeated trips to the trunk of his car which was "inextricably linked" to the blue van gave police probable cause to search the defendant's car and the container in the trunk).

### III.

The Court concludes that the search of the trunk and the subsequent seizure of cocaine from the champagne box were lawful. Accordingly, the orders of the district court denying appellant's motion to suppress the evidence obtained in the search is affirmed.