2004 WY 125

**Peter B. VASSAR, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 03–99.**

Supreme Court of Wyoming.

Oct. 29, 2004.

Representing Appellant: Daniel G. Blythe, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Carisa Acker, Student Intern, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] The appellant, Peter B. Vassar, appeals from the denial of his suppression motion. The district court found that a law enforcement officer properly seized a wooden "marijuana stash box" from the appellant's automobile pursuant to the "plain view" doctrine. The district court also upheld the officer's search of the wooden stash box (wherein the officer observed marijuana residue and smelled the odor of marijuana) and the subsequent search of the automobile's contents. We affirm.

## ISSUES

[¶ 2] The issues presented in this appeal are as follows:

1. Whether a law enforcement officer properly seized a wooden "stash box" from the appellant's automobile pursuant to the "plain view" doctrine?

2. Whether the officer had probable cause to conduct a warrantless search of the wooden stash box?

3. Whether the officer had probable cause to conduct a warrantless search of the automobile's contents?

## FACTS

[¶ 3] On April 21, 2002, Wyoming Highway Patrol Trooper Kleif Guenther (Trooper Guenther) responded to a single-vehicle rollover on southbound Interstate 25 in Laramie County. The driver of a Jeep Wrangler (the appellant's vehicle) had apparently lost control of the vehicle, causing it to exit the roadway, travel through a right-of-way fence, across a frontage road and through another fence, where it overturned. According to Trooper Guenther, the weather that day was "very sunny, nice, a few clouds, fairly warm," the road was "[d]ry and clear," and the appellant's vehicle left the roadway for "no apparent reason...."

[¶ 4] When Trooper Guenther arrived at the scene, the appellant (the vehicle's driver and only occupant) remained trapped in the vehicle. Trooper Guenther described the appellant at the scene as follows:

[W]henever law enforcement appeared to exit his vision he would calm down some, and the minute an officer in uniform would re[appear] in his vision ... he would become agitated and aggressive towards EMS personnel and firefighters.

[¶ 5] While standing beside the appellant's vehicle [1] ("maybe two or three feet away from it"), Trooper Guenther observed a wooden box just behind the driver's seat "propped up in the rear area of the vehicle" and in "plain view." A gold-colored image of a leaf, possibly made out of brass, appeared on the wooden box. Based on his knowledge, training and experience, Trooper Guenther testified that the leaf was a "marijuana leaf" [2] and the wooden box was "what is commonly known as a marijuana stash box...." A "stash box" is, according to Trooper Guenther, "a container to hold ... illegal substance[s]" and a "marijuana leaf on a wooden box is commonly associated with a stash box." Trooper Guenther testified that in his five-year career as a highway patrolman, he had "seen many kinds of stash boxes," and had seized "[m]aybe 50 to 75" stash boxes, approximately a dozen of which boxes were made of wood. According to Trooper Guenther, stash boxes come "in all sizes ... and shapes. Some have associated paraphernalia pictures such as a marijuana leaf on them. I've found some with that before. I've found

---

1. Trooper Guenther was "looking at the damage, the crush damage of the Jeep, seeing if there was anything in the Jeep that I should be aware of" as part of his investigation of the rollover.

2. Trooper Guenther testified that the image was an "exact replica of what a marijuana leaf looks like."

some with marijuana paraphernalia such as a glass pipe or a bong."

[¶ 6] Trooper Guenther reached into the appellant's vehicle, pulled out the wooden box, and opened the box. He observed marijuana residue in the box and smelled the odor of marijuana in the box. Based on this discovery, and considering that "it was a nice, sunny day, and this vehicle for no apparent reason drove off the road and wrecked" and the appellant's "behavior" at the scene, Trooper Guenther concluded that "something else was going on here other than a standard, unexplained rollover."

[¶ 7] The vehicle's top was "open," and items from inside the vehicle, as well as "pieces of the vehicle," were "scattered" within a fifty to seven-hundred-fifty foot radius of where the vehicle came to rest. Trooper Guenther noticed "some bags [that] appeared to be involved in the crash had been placed in somewhat of a pile which wasn't standard with the rest of the debris that was scattered about the . . . crash scene." Civilian passersby likely had placed the luggage in that position sometime after the rollover. Trooper Guenther had no reason to believe that the luggage did not come from the appellant's vehicle or that the luggage belonged to anyone other than the appellant.

[¶ 8] Trooper Guenther opened one of these bags and discovered the "hardware" or equipment for a clandestine methamphetamine lab. A Wyoming Division of Criminal Investigation (DCI) agent responded to the scene to investigate and process the suspected methamphetamine lab. At the scene, the DCI agent observed a black folder containing what appeared to be an "elaborate" recipe for manufacturing methamphetamine (including a price list for items and where the items could be purchased),[3] a quantity of suspected ephedrine, blenders, Pyrex bowls, a "heating type source," tubing, hot plates, tube cutters, and filters. These items were, in the DCI agent's experience, "common items that we find at methamphetamine labs." The equipment, according to the DCI agent, would

probably produce a "use" amount of methamphetamine under the circumstances, but the equipment itself could be used "over and over."

[¶ 9] After discovering the clandestine lab equipment, Trooper Guenther went to the hospital to verify the appellant's condition, continue the investigation, and arrest the appellant for "driving under the influence of a controlled substance and also with possession of clandestine lab material."[4] During a search of the appellant's belongings at the hospital, Trooper Guenther found a list of chemicals commonly used in manufacturing methamphetamine written on a matchbook.

[¶ 10] The appellant was charged with possessing laboratory equipment or supplies with intent to engage in a clandestine laboratory operation in violation of Wyo. Stat. Ann. § 35–7–1059(a)(ii) and (b) (LexisNexis 2003), a felony. In June 2002, the appellant filed a motion to suppress the evidence seized from his automobile and his belongings (at the hospital), which motion the district court denied. In denying the motion, the district court made the following findings relevant to the issues on appeal:

1. The district court did not attach any particular significance to the evidence that the appellant "was involved in a one-car accident on dry pavement during sunny weather" or that the appellant appeared agitated at the scene.

2. The district court found that while

investigating the accident patrolman Guenther observed a small wooden box inside the jeep behind the front seats. A likeness of a leaf is imposed on the lid of the box. Patrolman Guenther immediately recognized the leaf as a marihuana leaf and concluded that the wooden box was a "stash box." (According to patrolman Guenther, a "stash box" is a container used to store controlled substances and related paraphernalia.) He seized it and discovered that it smelled like marihuana. He also

---

3. According to Trooper Guenther, the black folder was located "in the same general area of where the lab contents were [at the] scene of the crash."

4. According to Trooper Guenther, a blood sample obtained from the appellant that day subsequently tested negative for "drugs or alcohol" and the appellant was actually "not impaired."

noticed a substance in the box that he recognized as marihuana residue.

3. The district court found that the wooden box's "incriminating character was immediately apparent" to the officer, as based upon both his previous experience with stash boxes and the unique style of the wooden box in question, patrolman Guenther concluded that it was a "stash box." Since a "stash box" is a product used for illegally storing controlled substances it is "drug paraphernalia." ... The Court finds patrolman Guenther's testimony credible and it finds that due to his experience and training he immediately recognized the wooden box as a "stash box" and hence of an incriminating character.

...

... The marihuana leaf gives the box distinctive characteristics that would reasonably lead someone to believe it contained contraband.

4. The district court concluded that the wooden box was properly seized pursuant to the plain view doctrine, and that the surrounding circumstances further gave the officer "reason to believe that contraband would be found within the jeep and its contents." According to the district court, a

reasonable and likely inference to draw from the evidence of marihuana within the box is that associated drug paraphernalia would be located within the vicinity of the "stash box." In this case that would be within the contents of the jeep. Therefore patrolman Guenther's search of the bags that fell out of the jeep was appropriate.

[¶ 11] Pursuant to a plea agreement, the appellant later conditionally pled guilty to the amended charge of conspiring with another to engage in a clandestine laboratory operation in violation of Wyo. Stat. Ann. § 35–7–1059(a)(iv), also a felony, and the prosecution agreed to "cap" its sentencing recommendation at imprisonment for four to eight years. In so pleading, the appellant preserved his right to appeal the district court's denial of the suppression motion. The district court ultimately sentenced the appellant to imprisonment at the Wyoming State Penitentiary for twenty-two to twenty-eight months and to pay a $10,000.00 fine. The district court stayed the imposition of the sentence pending this appeal and the appellant was released on an appeal bond.

## STANDARD OF REVIEW

[¶ 12] Our standard of review is as follows:

Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *Id.* The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo. *Id.; Brown v. State*, 944 P.2d 1168, 1170–71 (Wyo.1997).

*McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999). In his appellate brief, the appellant states that in the instant case, the district court's factual findings "are not clearly erroneous. The conclusion of law reached by the district court based on the facts was in error."

## DISCUSSION

[¶ 13] On appeal, the appellant claims that Trooper Guenther's actions violated the Fourth Amendment to the United States Constitution and Wyo. Const. art. 1, § 4.[5]

5. The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Wyo. Const. art. 1, § 4 provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be

Neither the federal nor the state constitution forbids *all* searches and seizures; rather, they prohibit **unreasonable** searches and seizures. *Guerra v. State,* 897 P.2d 447, 452 (Wyo.1995). Warrantless searches and seizures are unreasonable *per se,* with but a few exceptions. *Gehnert v. State,* 956 P.2d 359, 362 (Wyo. 1998); *Morris v. State,* 908 P.2d 931, 935 (Wyo.1995). Those exceptions include:

"1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property."

*Morris,* 908 P.2d at 935 (*quoting Ortega v. State,* 669 P.2d 935, 940–41 (Wyo.1983), *overruled on other grounds sub nom. Jones [v. State],* 902 P.2d [686] at 692 [ (Wyo.1995) ] ). When a proper objection or motion is made by a defendant, the state bears the burden of proving that one of these exceptions applies. *Mickelson v. State,* 906 P.2d 1020, 1022 (Wyo.1995); *Dickeson [v. State],* 843 P.2d [606] at 610 [ (Wyo.1992) ].

*Lancaster v. State,* 2002 WY 45, ¶ 61, 43 P.3d 80, 102–03 (Wyo.2002) (emphasis in original). The fourth and fifth of these listed exceptions are at issue in the instant appeal.

[¶ 14] The appellant's analysis under the Wyoming Constitution is essentially that because Article 1, Section 4 includes an "affidavit" requirement, the probable cause necessary to justify a warrantless search under the Wyoming Constitution "may be more important" and/or "should be stronger." While we appreciate the appellant's effort in attempting to present an independent state constitutional analysis, we conclude that the analysis presented does not constitute the "precise, analytically sound approach [required] when advancing an argument to independently interpret the state constitution." *Vasquez v. State,* 990 P.2d 476, 484 (Wyo. 1999). A failure to present a sufficient argument supporting " 'adequate and independent state grounds,' . . . prevents this court, as a matter of policy, from considering other than the federal constitutional principles at issue. . . ." *Wilson v. State,* 874 P.2d 215, 219 (Wyo.1994) (*quoting Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)). *See also Fender v. State,* 2003 WY 96, 74 P.3d 1220, 1225 (Wyo.2003) and *Meek v. State,* 2002 WY 1, ¶ 7 n. 2, 37 P.3d 1279, 1282 n. 2 (Wyo.2002). Accordingly, we will analyze the issues in this case pursuant to the Fourth Amendment to the United States Constitution.

[¶ 15] The district court concluded that Trooper Guenther's warrantless seizure of the wooden "stash box" was valid under the "plain view" doctrine. We have previously set forth the three requirements for a valid seizure of evidence in plain view: "(1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself." *Taylor v. State,* 7 P.3d 15, 21 (Wyo.2000).

[¶ 16] The appellant focuses his argument on the second requirement. He argues that the wooden "stash box" at issue in the instant case was "not so unique or . . . such a limited or single purpose item to justify the opening of the box or the [warrantless] seizure of the box." In other words, there was "nothing about this box that is so readily apparent that anyone would know that the box was criminal in nature" and "no foundation was provided to show that this was a stash box as opposed to some other type of container." To support this argument, the appellant primarily relies upon two cases: *People v. Evans,* 259 Ill.App.3d 650, 197 Ill. Dec. 650, 631 N.E.2d 872 (1994) and *State v.*

violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

*Runge,* 8 Neb.App. 715, 601 N.W.2d 554 (1999).

· ▮▮▮ [¶ 17] We agree with the district court that Trooper Guenther's warrantless seizure of the wooden box he observed in the appellant's vehicle was justified under the plain view doctrine. The use of the phrase "immediately apparent" was "very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Texas v. Brown,* 460 U.S. 730, 741, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). " '[T]he seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.' " Id.* at 741–42, 103 S.Ct. 1535 (*quoting Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)) (emphasis in original). The Tenth Circuit Court of Appeals has stated the requirement as follows: " '[t]he officer['s] discovery of the object must so galvanize [his] knowledge that [he] can be said, at that very moment or soon thereafter, to have probable cause to believe the object to be contraband or evidence.' " *United States v. Naugle,* 997 F.2d 819, 823 (10th Cir.), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993) (*quoting United States v. Rutkowski,* 877 F.2d 139, 142 (1st Cir.1989)). However, probable cause

> is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" . . . that certain items may be contraband or stolen

property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

*Brown,* 460 U.S. at 742, 103 S.Ct. 1535 (*quoting Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). *See also Naugle,* 997 F.2d at 823.

[¶ 18] In the instant case, the district court found that Trooper Guenther was a credible witness, which finding the appellant does not question on appeal. Trooper Guenther observed a small wooden box "propped up" amongst other belongings behind the driver's seat of the appellant's vehicle. Emblazoned in gold on the top of the wooden box was what Trooper Guenther "immediately" recognized as an "exact replica" of a marijuana leaf. A photograph of the image clearly lends objective support to Trooper Guenther's assessment. Likewise, Trooper Guenther deduced from his knowledge, training, and experience as a law enforcement officer that the wooden box was a "stash box" or container used to store illegal controlled substances such as marijuana.[6] Trooper Guenther testified that he had seen many kinds of stash boxes, having seized between fifty and seventy-five of them. Some of these boxes had pictures such as a marijuana leaf on them and a marijuana leaf on a wooden box was, according to Trooper Guenther, "commonly associated" with such a stash box.[7] The wooden box's incriminating

---

6. We note that Wyo. Stat. Ann. § 35–7–1002(a)(xxvii) (LexisNexis 2001) defines "[d]rug paraphernalia" to include "all equipment . . . when used . . . or designed for use for . . . storing, containing, concealing . . . a controlled substance in violation of this act. . . ."

7. We are not left to review these circumstances in a vacuum. A "police officer views the facts through the lens of his police experience and expertise" and a "police officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States,* 517 U.S. 690, 699, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("[t]o a layman the sort of loose panel below the back seat armrest in the

automobile involved in this case may suggest only wear and tear, but to Officer Luedke, who had searched roughly 2,000 cars for narcotics, it suggests that drugs may be secreted inside the panel" and an "appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable"). *See also Brown,* 460 U.S. at 746, 103 S.Ct. 1535 (Powell, J., concurring) (even "if it were not generally known that a balloon is a common container for carrying illegal narcotics, we have recognized that a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person"); *United States v. Sparks,* 291 F.3d 683, 688–89 (10th Cir.2002); and *Lee v.*

character was therefore immediately apparent and Trooper Guenther had probable cause to seize the wooden box.

■■■■ [¶ 19] For the same reasons, we also find that Trooper Guenther had probable cause to search the wooden stash box. The "seizure" of a container pursuant to the plain view doctrine "does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to either a search warrant ... or one of the well-delineated exceptions to the warrant requirement." *Horton v. California,* 496 U.S. 128, 141 n. 11, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). However,

> where the contents of a seized container are a foregone conclusion, this prohibition against warrantless searches of containers under the plain view doctrine does not apply. We have held that when a container is " 'not closed,' or 'transparent,' or when its 'distinctive configuration ... proclaims its contents,' the container supports no reasonable expectation of privacy and the contents can be said to be in plain view." [*United States v. Donnes,* 947 F.2d 1430, 1437 (10th Cir.1991) ] (citations omitted). *See also United States v. Eschweiler,* 745 F.2d 435, 440 (7th Cir.1984) (police may open envelope that clearly contained key) ...; *United States v. Morgan,* 744 F.2d 1215, 1222 (6th Cir.1984) (police may open bottle without a warrant where label on bottle made it apparent that the bottle contained contraband).... [W]here the police already possess knowledge approaching certainty as to the contents of the container, the search of the container does not unreasonably infringe upon the individual interest in preserving the privacy of those·contents.

*United States v. Corral,* 970 F.2d 719, 725–26 (10th Cir.1992). *See also Hunter v. State,* 704 P.2d 713, 715–16 (Wyo.1985) (police knew car was stolen, car itself "was contraband" and "it very possibly could also contain contraband, i.e., the personal belongings which were stolen along with the car"). The distinctive configuration of the wooden stash box at issue in the instant case was such that it essentially proclaimed the box's contents.

[¶ 20] The aforementioned cases relied upon by the appellant are distinguishable because the characteristics of the containers seized in those cases are dissimilar to the wooden stash box seized in the instant case. In *Evans,* 197 Ill.Dec. 650, 631 N.E.2d at 873–75, an officer seized from the defendant's person what is described as a small unmarked wooden box (the officer did not "notice any writing on the outside of" the box), which box "measured about 1½ inches by 2½ inches and was closed on all sides." The court concluded that such a box was not "sufficiently distinctive so as to announce its contents" and in the absence of other circumstances, the officer lacked probable cause to conduct a warrantless search of the wooden box and, therefore, the defendant's vehicle. *Id.* at 877–78. In *Runge,* 601 N.W.2d at 558, an officer seized a baggie and a film canister from the defendant's person; the officer could not see what, if anything, was in these containers. The court concluded that the containers were "not distinctive enough, standing alone, to announce drug contents" and the officer was not justified in seizing them. *Id.* at 563–64.

*State,* 2 P.3d 517, 522 (Wyo.2000) (in evaluating probable cause to support a search warrant, the "experience and expertise of the arresting officer are factors that can be considered"). Indeed, from objective information,

> a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
>
> ...
>
> ... [W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion.

*United States v. Cortez,* 449 U.S. 411, 418–19, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), *cert. denied,* 455 U.S. 923, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982). *See also Lopez v. State,* 643 P.2d 682, 683–84 (Wyo.1982) and *Cook v. State,* 631 P.2d 5, 8 (Wyo.1981).

[¶ 21] The appellant further argues that Trooper Guenther did not have probable cause to then conduct what he characterizes as a warrantless "general search of the automobile, luggage, containers or personal papers." According to the appellant, Trooper Guenther did not possess the requisite probable cause to search the vehicle's remaining contents based on "the suggestion of a personal use quantity of marijuana...."

" 'The search and/or seizure of an automobile upon probable cause is one of the recognized exceptions [to the warrant requirement].... [T]his court [has] recognized that differences exist between motor vehicles and other property, which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts.' "

*Borgwardt v. State,* 946 P.2d 805, 807 (Wyo. 1997) (*quoting Gronski v. State,* 910 P.2d 561, 564 (Wyo.1996)).

"Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Downs,* 151 F.3d 1301, 1303 (10th Cir.1998) (internal quotation marks and emphasis omitted). "The scope of a warrantless search of an automobile 'is defined by the object of the search and the places in which there is probable cause to believe that it may be found.' " *United States v. Nielsen,* 9 F.3d 1487, 1491 (10th Cir.1993) (quoting *United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)).

*United States v. Vasquez–Castillo,* 258 F.3d 1207, 1212–13 (10th Cir.2001).

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.... When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

. . .

The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

. . .

... We hold that the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*United States v. Ross,* 456 U.S. 798, 820–25, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (footnotes omitted). *See also Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) and *Hunter,* 704 P.2d at 716–17.

[¶ 22] We conclude that the circumstances of the instant case would lead a person of ordinary caution to believe that there was a fair probability that the appellant's automobile contained marijuana and/or paraphernalia associated with the use of marijuana. We have previously detailed the facts surrounding Trooper Guenther's seizure of the wooden stash box he observed among the contents of the vehicle's passenger compartment. In searching the stash box, Trooper Guenther discovered what he believed to be marijuana residue in the box, and also detected the odor of marijuana. The appellant does not question Trooper

Guenther's reliability in arriving at either of these conclusions. Trooper Guenther also testified that he had previously (in other cases) seized stash boxes with marijuana paraphernalia such as a glass pipe or a bong.

[¶ 23] In applying the above-cited legal principles, several other courts have found probable cause to search an automobile in its entirety based on the presence of marijuana, even in small quantities. *See, for example, United States v. Sparks*, 291 F.3d 683, 690–92 (10th Cir.2002); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir.1995) (probable cause to search entire automobile where officers smelled marijuana in the automobile and found a rolled-up dollar bill with white powder residue and a marijuana cigarette on the defendant's person); *United States v. Ashby*, 864 F.2d 690, 692 (10th Cir.1988), *cert. denied*, 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990) (probable cause to search entire automobile where officer first smelled the odor of burnt marijuana and observed what he believed to be marijuana seeds or residue in the car's interior, and then located marijuana in a cracker box and the automobile's ashtray, floorboard and seat, and later smelled raw marijuana coming from the trunk and located sixty-eight pounds of marijuana in the trunk); *People v. Moore*, 900 P.2d 66, 70–71 (Colo.1995) (probable cause to search automobile for contraband or evidence of a crime based on marijuana cigarette produced by vehicle occupant and knowledge that occupants were suspected of drug activity); *State v. Longo*, 243 Conn. 732, 708 A.2d 1354, 1357–59 (1998) (probable cause to search entire automobile after officer smelled marijuana and saw marijuana seeds and cigarettes in plain view inside car—"traces of marijuana observed in plain view provided probable cause to search the entire vehicle, and any containers, for additional marijuana"); *Ledda v. State*, 564 A.2d 1125, 1127–29 (Del.Supr.1989) (probable cause to search entire automobile based on discovery of small bag of green plant material later identified as marijuana in glove compartment); *State v. Schinzing*, 342 N.W.2d 105, 110 (Minn.1983)

("discovery of marijuana in the ashtray gave [officer] probable cause to believe that he would find marijuana elsewhere and justified his searching anywhere in the car that he might reasonably expect to find more marijuana" and "discovery of some marijuana in a car gives probable cause to search for more"); *Fleming v. State*, 502 So.2d 327, 329 (Miss.1987) (probable cause to search entire automobile when marijuana seeds and parts of marijuana observed in automobile's passenger compartment and odor of marijuana emanating from passenger compartment); *Hall v. State*, 1988 OK CR 286, 766 P.2d 1002, 1005 (Okla.Crim.App.1988) ("having found a marijuana cigarette which fell from appellant's clothing during a lawful pat down search incident to arrest, the officer was further justified in searching the car because probable cause existed that the vehicle contained other illegal drugs and paraphernalia"); *Hill v. State*, 516 S.W.2d 361, 366 (Tenn.Crim.App.1974) ("search of the glove compartment of the car can be justified as reasonable on the ground that [officer] could have insisted that by finding the plastic bag of marihuana in plain view on the seat of the defendant's car it was reasonable for him to conclude that in all probability there was other marihuana in the glove compartment"); and 3 Wayne R. LaFave, *Search and Seizure* § 7.2(c) (3rd ed.1996 and Supp.2004) (citing cases). *See also People v. McMillon*, 892 P.2d 879, 882–83 (Colo.1995) (probable cause to search automobile for "contraband or evidence of criminal activity" where driver had prior record for possession of drug paraphernalia, a syringe was observed between the driver's seat and the center console, and driver stated that no one who drove or used car was diabetic).

[¶ 24] Some courts have also directly refused to limit the scope of such a search based on the discovery of claimed "personal use" amounts of marijuana.[8] In *United States v. Loucks*, 806 F.2d 208, 209 (10th Cir.1986), Loucks was stopped for speeding in Wyoming. The officer, based on his expe-

---

8. It is worth noting that even in some cases that do impose such a limitation, courts have found that a search of the vehicle's passenger compartment (and its contents) was justified. *See, for*

*example, Wimberly v. Superior Court*, 16 Cal.3d 557, 128 Cal.Rptr. 641, 547 P.2d 417 (1976) and 3 Wayne R. LaFave, *supra*, § 7.2(c) (citing cases).

rience with marijuana arrests, noticed a strong odor of marijuana on Loucks and what the officer thought was still-burning marijuana in the vehicle's passenger compartment. The officer searched the vehicle's interior and discovered a small wooden box containing what appeared to be marijuana, marijuana cigarette butts in the vehicle's ashtray and a small brown paper bag containing marijuana. The officer proceeded to search the vehicle's trunk, finding twenty-five pounds of marijuana. *Id.*

[¶ 25] On appeal, Loucks conceded that the officer had probable cause to search the vehicle's passenger compartment for the marijuana Loucks was "personally using," but argued that the officer did not have probable cause to search the entire vehicle. *Id.* at 210. The Tenth Circuit Court of Appeals, citing *United States v. Burnett,* 791 F.2d 64 (6th Cir.1986), rejected Loucks' "personal use" argument and concluded that the officer in Loucks had probable cause under the United States Supreme Court's decision in *Ross* to search Loucks' entire vehicle. *Loucks,* 806 F.2d at 210–11. *See also United States v. Colonna,* 360 F.3d 1169, 1173–75 (10th Cir.2004) and *United States v. Turner,* 119 F.3d 18, 20–21 (D.C.Cir.1997) (rejecting "personal use" argument that smell of burnt marijuana emanating from car, torn cigar paper, and ziploc bag of green weed material on floor behind driver's seat did not give officer probable cause to search entire vehicle, and finding that the evidence supported probable cause that defendant "might have hidden additional drugs not necessary for his current consumption in areas out of plain sight, including the trunk of the car").

[¶ 26] In *Burnett,* 791 F.2d at 65–66, an officer observed a plastic bag containing a green, leafy substance on a vehicle's floorboard, and subsequently discovered 245 grams of cocaine in a champagne box in the vehicle's trunk. On appeal, Burnett argued that "two ounces of marijuana found on the floorboard of the car indicates that the appellant is only a casual user of narcotics as opposed to a dealer" and the officer therefore did not have probable cause to search the entire vehicle. *Id.* at 67.

The appellant is asking this Court to burden the police with having to make another judgment call—whether a certain amount of marijuana, cocaine, or other drug found on a person or in some container makes the person a casual user or a dealer. Determining the existence of probable cause to search on the amount of contraband initially found is a line which need not and should not be drawn. Probable cause has never been defined quantitatively and the appellant's theory that "smaller is not necessarily bigger" must be rejected. From the long history of litigated drug cases, it is evident that neither the casual user nor the dealer fits any precise description or category.

. . .

Under the *Ross* rationale, the search of the appellant's trunk, resulting in the discovery of the champagne box, was lawful and justified. . . . The marijuana package on the floorboard of the vehicle was in plain view and was legally seized by the officer. Once the contraband was found, [the officer] had every right to search the passenger area of the car, the trunk, and any and all containers which might conceal contraband.

*Id.* at 67–68 (footnote omitted).

[¶ 27] Searches of this nature, of course, are limited in scope to areas or containers which may contain the object of the search. "Drug evidence can readily be concealed in small containers. . . ." *Moore,* 900 P.2d at 71 (search of wallet). In the instant case, Trooper Guenther proceeded to search luggage that was ejected from the appellant's vehicle. In that luggage, Trooper Guenther discovered clandestine methamphetamine lab equipment. The appellant does not argue that the luggage at issue was incapable of concealing marijuana or paraphernalia associated with the use of marijuana. The appellant does argue that law enforcement exceeded the permissible scope of the search by searching the "folder" wherein the elaborate methamphetamine recipe was discovered. While witnesses characterized the item as a "folder," it is apparent from a photograph of the item that the "folder" was a zippered case containing what appear to be several

magazines, the approximately 8½″ × 11″ methamphetamine recipe and a similarly-sized notepad. We conclude that this item clearly was capable of concealing the objects of the search.

[¶ 28] The appellant also suggests that because he was hospitalized and his vehicle was damaged and allegedly immobile, the exigencies underlying the automobile exception did not exist in the instant case. This argument is not supported by citations to pertinent legal authority. We note that although

> the automobile exception is based in part on exigency, "the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant."

*United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir.1993) (*quoting Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982)). *See also Sparks*, 291 F.3d at 690; *Vasquez–Castillo*, 258 F.3d at 1212–13; *Callaway v. State*, 954 P.2d 1365, 1369 (Wyo.1998); and 3 Wayne R. LaFave, *supra*, § 7.2(b) at 476 ("if it appears that the car has only recently and suddenly become disabled (perhaps as a result of an accident while pursued by police), then it seems likely that the *Carney* doctrine *is* applicable") (emphasis in original). In other words, if "police have probable cause to search a car, they need not get a search warrant first even if they have time and opportunity." *Ludwig*, 10 F.3d at 1528. *See generally also State v. Williams*, 2004 WY 53, 90 P.3d 85 (Wyo. 2004).

[¶ 29] Finally, the appellant states that the search of his belongings at the hospital was improper because Trooper Guenther did not have probable cause to arrest the appellant for driving while under the influence of a controlled substance. This argument was not accompanied by citations to pertinent legal authority. We further note that Trooper Guenther testified at the suppression hearing that after he discovered the clandestine methamphetamine lab equipment, he proceeded to the hospital to arrest the appellant for "driving under the influence of a controlled substance and also ... possession of clandestine lab material." On appeal, the appellant does not question Trooper Guenther's probable cause to arrest the appellant for the second offense. In addition, the appellant states in his appellate brief that the district court did not specifically rule on the seizure of items from the appellant's belongings and that "in light of the court's ruling on the Motion for Suppression the personal clothing search is not an issue on appeal."

[¶ 30] Accordingly, we affirm the district court's denial of the appellant's motion to suppress.